UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DEMETRIUS WILLIAMS,

                Petitioner,

v.

UNITED STATES OF AMERICA,

                Respondent.

No. 12-CR-726 (KMK)
No. 17-CV-4317 (KMK)

ORDER

KENNETH M. KARAS, United States District Judge:

On May 8, 2014, pro se Petitioner Demetrius Williams ("Petitioner") pled guilty to one narcotics conspiracy charge and one firearms charge related to the narcotics charge, and was sentenced to 137 months' imprisonment. (*See* Dkt. (entries for May 8, 2014 and Nov. 5, 2014).)[1] Petitioner has filed a Petition, pursuant to 28 U.S.C. § 2255, to vacate, set aside, or correct his sentence (the "Petition"). (*See* Pet. (Dkt. No. 39).) For the reasons stated herein, the Petition is denied.

I. Factual History

On September 20, 2012, a grand jury returned an indictment (the "Indictment"), which charged Petitioner with three counts. (*See generally* Indictment (Dkt. No. 7).) Count One charged Petitioner with being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). (*Id.* at 1.) Count Two charged Petitioner with intentionally and knowingly possessing with intent to distribute a controlled substance, namely crack cocaine, in violation of 21 U.S.C. §§ 812, 841(a)(1), and 841(b)(1)(B). (*Id.* at 2.) Count Three charged Petitioner with knowingly using and carrying a firearm in relation to the drug trafficking crime referred to in

---

[1] All citations in this Order are to the criminal docket, Case No. 12-CR-726, unless noted otherwise.

Count Two, in violation of 18 U.S.C. § 924(c). (*Id.*) The charges stemmed from evidence recovered in connection with Petitioner's August 12, 2012 arrest by police officers from the Town of Newburgh Police Department after an alleged domestic dispute between Petitioner and his girlfriend. (Gov't's Mem. of Law of in Opp'n to Pet. ("Gov't's Opp'n") 2 (Dkt. No. 41)).

After arresting Petitioner and transporting him to the Town of Newburgh Police Station, one of the officers initiated an inventory search and impounded Petitioner's truck. (*Id.*) The inventory search revealed an unloaded .25 caliber Raven semi-automatic pistol and a box containing forty-three rounds of .25 caliber ammunition, as well as a blue cooler in the truck's bed with currency protruding. (*Id.*) After the truck was impounded, the officer completed the inventory search, and recovered from inside the cooler: (1) $13,831 in cash, (2) $25.75 in change, (3) more than fifteen bundles of a brown powdery substance that field tested positive for heroin, (4) additional packages containing a white powdery substance that field tested positive for cocaine, and (5) a large plastic bag containing twelve smaller clear plastic baggies and three loose packages, all of which contained a rock-like substance that field tested positive for crack cocaine. (*Id.* at 2–3.) The combined weight of the crack cocaine was determined to be 57.3 grams. (*Id.* at 3.) The inventory search also revealed a loaded handgun magazine wrapped in a receipt loaded with seven .25 caliber rounds under the truck's passenger seat. (*Id.*)

Petitioner's counsel moved to suppress physical evidence obtained from the inventory search of Petitioner's truck (the "Suppression Motion"). (*See* Omnibus Mot. ("Mot. To Suppress") (Dkt. No. 9).) In particular, Petitioner's counsel alleged that because Petitioner was "arrested for a domestic violence incident which did not involve any weapons or drugs," and because Petitioner "was not in his vehicle at the time of his arrest and . . . the vehicle was legally parked at the time," the inventory search violated Petitioner's Fourth Amendment rights. (*Id.*

¶¶ 6–7.) In connection with the Suppression Motion, defense counsel also submitted letters and affidavits to the Court suggesting that the seizure of Petitioner's car was pretextual, as the officers had intended to conduct an investigative search. (*See* Dkt. Nos. 14, 19, 20.) For example, a relative attested to the fact that he had shown up at the arrest scene to pick up the vehicle, but was denied access to it. (Aff. of Gene Williams ("Gene Williams Aff.") ¶¶ 7–8 (Dkt. No. 14).) In connection with the Suppression Motion, counsel for Petitioner requested a hearing to determine the validity of the search and seizure of Petitioner's vehicle and items found inside of it. (Mot. To Suppress ¶ 9.)

The Government opposed the Suppression Motion, arguing that the evidence had been seized pursuant to a valid inventory search. (Gov't's Mem. of Law in Opp'n to Mot. To Suppress ("Gov't's Opp'n to Mot. To Suppress") 7–11 (Dkt. No. 12).) In particular, the Government argued that the police officers present at the scene had acted in good faith and that the search was conducted in manner that conformed with the standardized procedures of the Town of Newburgh Police Department's "Vehicle Towing and Impounded Inventory Policy" (the "Inventory Policy"). (*Id.* at 9–11; *see id.* Ex. C ("Inventory Policy") (Dkt. No. 12).) The Government further explained that the police officers approached Petitioner's truck after it was discovered near the residence of Petitioner's girlfriend. (*Id*. at 3–4.) The officers saw that the vehicle was parked perpendicular to a "designated parking area" on the side of the street, rather than in a legal parking space. (*Id*. at 3.) The officers arrested Petitioner based on information provided by his girlfriend. (*Id*. at 4–5.) The officers told Petitioner that his truck would be towed upon his arrest, but allowed Petitioner to use his cell phone to call someone to pick up the vehicle. (*Id*. at 5.) After Petitioner was unable to locate someone to immediately pick up the truck, one officer took Petitioner into custody and transported him to the police station, while the

other officer stayed behind to call a towing service and conduct an inventory search. (*Id*.) It appeared to be largely undisputed that the officers allowed Petitioner to make multiple calls to have someone promptly retrieve the truck for him, which, if successful, would have precluded the need for seizure and inventory. (*See id.*; Aff. of Demetrius Williams ("Demetrius Williams Aff.") ¶¶ 6–9 (Dkt. No. 19).)

The Court never held a hearing on the Suppression Motion, as two days before it was to begin, Petitioner's counsel indicated that the Parties had reached a disposition. (*See* Dkt. No. 26.)

On May 8, 2014, Petitioner pled guilty before this Court. (*See* Dkt. (minute entry for May 8, 2014).) The guilty plea was entered pursuant to a plea agreement dated May 1, 2014 (the "Plea Agreement") in a proceeding that complied fully with Rule 11 of the Federal Rules of Criminal Procedure. (*See generally* Plea Agreement; Plea Hr'g Tr. (May 8, 2014) ("Plea Tr.") (Dkt. No. 28).) Under the Plea Agreement, Petitioner pleaded guilty to the lesser included offense for Count Two and to Count Three. (See Plea Agreement 1–2 & n.1; Plea Tr. 2.) At his guilty plea, among other things, Petitioner expressly acknowledged his satisfaction with counsel's representation, that he understood his constitutional rights and the waiver of many of those rights, that he understood the charges against him, and that he understood the consequences of being convicted of the charges to which he was pleading guilty. (*Id*. at 8–24.)

The issue of the pending Suppression Motion was also repeatedly addressed during the proceedings. At three points during the proceeding, Petitioner and/or his attorney acknowledged that Petitioner was knowingly forgoing any challenge to the Government's evidence from the inventory search. (*Id.* at 9, 10, 12–13.) First, when discussing Petitioner's signature on the Court's waiver of constitutional rights, the following exchange occurred:

4

> THE COURT: Before you [defense counsel] and your client signed this document, you went over it carefully with him?
>
> MR. HEINRICH: I did. I read it to him and then he read it himself[,] and I am convinced he understands all the rights he's giving up, including specifically, Judge, the Court knows that we were here originally scheduled for a long[-]fought[-]for suppression hearing and he realizes we've given up that right.
>
> THE COURT: Thanks for putting that on the record, Mr. Heinrich.
>
> THE COURT: Did you hear everything that your lawyer just said, Mr. Williams?
>
> THE DEFENDANT: Yes.

(*Id.* at 8–9.)

Later in the plea allocution, when discussing Petitioner relinquishing his right to have counsel confront the Government's witnesses in a trial, Petitioner again acknowledged that he was prepared to forgo his right to challenge the Government's evidence:

> THE COURT: . . . Mr. Heinrich could object to evidence he doesn't think the [G]overnment should be allowed to introduce . . . . Do you understand that?
>
> THE DEFENDANT: Yes.

(*Id*. at 10.)

Finally, as part of a detailed colloquy addressing the previously scheduled suppression hearing, Petitioner explicitly conceded once again that he no longer wished to contest the inventory search's validity:

> THE COURT: Following on what Mr. Heinrich said, among the issues in this case was you were exercising your right to seek to suppress certain evidence you don't think the [G]overnment should be allowed to introduce in this case. Do you understand that?
>
> THE DEFENDANT: Yes.
>
> THE COURT: In fact, originally we were scheduled to have a hearing where the [G]overnment was going to be put to the burden of proving that the seizure of the evidence in this case was lawful. Do you understand that?

>   THE DEFENDANT: Yes.
>
>   THE COURT: And at this hearing, Mr. Heinrich would again on your behalf be able to cross-examine the [G]overnment's witnesses, object to inadmissible evidence, offer evidence on your behalf, and even force people to testify on your behalf. Do you understand all of that?
>
>   THE DEFENDANT: Yes.
>
>   THE COURT: If you plead guilty, you'll be giving up your right to challenge the [G]overnment's seizure of evidence in this case. Do you understand that?
>
>   THE DEFENDANT: Yes.

(*Id.* at 12–13.)

On November 5, 2014, the Court conducted a sentence proceeding that complied fully with Rule 32 of the Federal Rules of Criminal Procedure. (Tr. (Nov. 5, 2014) ("Sentencing Tr.") 18–25.) During this proceeding, the Court imposed a sentence of 77 months' imprisonment for Count Two, to be followed by the mandatory consecutive sentence of 60 months for Count Three, for a total sentence of 137 months' imprisonment. (*Id.* at 25.)

Petitioner filed a notice of appeal pro se dated November 10, 2014. (Dkt. No. 37.) Petitioner's appellate counsel filed a brief with the Second Circuit, asserting that Petitioner had no non-frivolous legal arguments, and asking to be relieved, pursuant to *Anders v. California*, 386 U.S. 738 (1967). (Dkt. Nos. 42, 50 (Case No. 14-4400 Dkt. (2d Cir.)).) The Government moved in turn to dismiss the appeal based on the Plea Agreement's appellate waiver or, in the alternative, for summary affirmance. (Dkt. No. 68 (Case No. 14-4400 Dkt. (2d Cir)).) On July 13, 2016, the Second Circuit granted the *Anders* motion, the motion to dismiss with respect to Petitioner's sentence, and the motion for summary affirmance with respect to Petitioner's conviction and special assessment. (Dkt. No. 38.)

Petitioner subsequently filed the instant motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. (*See generally* Pet.)

II. Discussion

Petitioner argues that he received ineffective assistance of counsel and seeks to withdraw his guilty plea. (Pet. 5.) Specifically, Petitioner claims that his counsel was ineffective for failing to "present[] a motion to [suppress]" the evidence obtained during the inventory search of Petitioner's vehicle. (*Id.*) Varying slightly from the arguments presented by trial counsel before Petitioner accepted the Plea Agreement and pled guilty, Petitioner alleges that the search was illegal because (1) the search was not connected to the domestic violence dispute for which he was arrested, (2) Petitioner was not present for and did not authorize the search, and (3) Petitioner did not possess a firearm or otherwise pose a threat to the arresting officers. (*Id.*) Petitioner argues that, in light of these purported claims, his Fourth, Fifth, and Sixth Amendment rights were violated. (*Id.*)

A. Standard of Review

1. Section 2255 Petitions

A prisoner in federal custody may move to vacate, set aside, or correct his sentence only "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a).[2] "Because collateral challenges are in tension with society's

---

[2] Title 28 U.S.C. § 2255(a) provides:

A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was

strong interest in the finality of criminal convictions, the courts have established rules that make it more difficult for a defendant to upset a conviction by collateral, as opposed to direct, attack." *Yick Man Mui v. United States*, 614 F.3d 50, 53 (2d Cir. 2010) (citation and quotation marks omitted). To prevail on a collateral attack of a final judgment under § 2255, a petitioner must demonstrate either the existence of a "constitutional error . . . or an error of law or fact that constitutes a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995) (citations and quotation marks omitted); *accord Cuoco v. United States*, 208 F.3d 27, 30 (2d Cir. 2000); *Rodriguez v. United States*, No. 11-CV-2957, 2013 WL 6171618, at *3 (S.D.N.Y. Nov. 25, 2013), *aff'd*, 679 F. App'x 41 (2d Cir. 2017).

In ruling on a § 2255 petition, the district court is required to hold a hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). Moreover, a hearing is not required where the petitioner's allegations are "vague, conclusory, or palpably incredible." *Gonzalez v. United States*, 722 F.3d 118, 130–31 (2d Cir. 2013) (quotation marks omitted) (quoting *Machibroda v. United States*, 368 U.S. 487, 495 (1962)). To justify a hearing, the petition "must set forth specific facts supported by competent evidence, raising detailed and controverted issues of fact that, if proved at a hearing, would entitle [the petitioner] to relief." *Id.* at 131. Finally, because Petitioner is appearing pro se, the Court construes the Petition and his other submissions liberally and interprets them to raise the strongest arguments that they suggest. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001).

---

> without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

## 2. Ineffective Assistance Claims

Claims of ineffective assistance of counsel are evaluated under the framework set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). "First, the [petitioner] must show that counsel's performance was deficient." *Id*. at 687. "Second, the [petitioner] must show that the deficient performance prejudiced the defense." *Id.*

Petitioner will not meet the first prong based solely on disagreements with counsel's strategy or advice. Indeed, there is a "strong presumption" that counsel's conduct fell within the vast spectrum of reasonable assistance, and it is Petitioner's burden to demonstrate "that counsel's representation was unreasonable under prevailing professional norms and that the challenged action was not sound strategy." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986) (citation omitted); *see also Bonilla v. Lee*, 35 F. Supp. 3d 551, 575 (S.D.N.Y. 2014) (same); *Henderson v. Martuscello*, No. 10-CV-5135, 2013 WL 6463348, at *15 (S.D.N.Y. Dec. 10, 2013) ("Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable, even where counsel adopts a course of action (or inaction) that seems risky, unorthodox[,] or downright ill-advised." (citation, alteration, and quotation marks omitted)). Thus, to satisfy this prong, Petitioner must demonstrate that counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed . . . by the Sixth Amendment." *Strickland*, 466 U.S. at 687. In assessing counsel's conduct, "a reviewing court must judge his conduct on the basis of the facts of the particular case, 'viewed as of the time of counsel's conduct,' and may not use hindsight to second-guess his strategy choices." *Mayo v. Henderson*, 13 F.3d 528, 533 (2d Cir. 1994) (citations omitted) (quoting *Strickland*, 466 U.S. at 690).

With respect to the "prejudice" prong, "[the petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding below would have been different." *United States v. Caracappa*, 614 F.3d 30, 49 (2d Cir. 2010) (citation and quotation marks omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding," as "[v]irtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Id.* at 693 (citation omitted). "'[P]urely speculative' arguments about the impact of an error do not establish prejudice." *DeCarlo v. United States*, No. 11-CV-2175, 2013 WL 1700921, at *4 (S.D.N.Y. Apr. 17, 2013) (alteration in original) (quotation marks omitted) (quoting *United States v. Weiss*, 930 F.2d 185, 199 (2d Cir.1991)). Measuring this probability depends on the context of the alleged error. Where the challenge is to a guilty plea on the basis of ineffective assistance of counsel, the petitioner must show that "there is a reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial." *United States v. Cuoto*, 311 F.3d 179, 187 (2d Cir. 2002) (citation and quotation marks omitted), *abrogated on other grounds by Padilla v. Kentucky*, 599 U.S. 356 (2010).

B. Analysis

Petitioner's claim that trial counsel's failure to raise certain challenges to the inventory search rendered counsel constitutionally ineffective, (Pet. 5), does not meet the high bar for such a finding. First, any potential suppression motion lacked merit, because the inventory search was conducted in a lawful manner. Second, because the purportedly omitted arguments lack merit,

10

Petitioner has failed to show that his attorney's conduct "fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Third, for similar reasons, Petitioner has not and cannot show that, even if his counsel's performance had been deficient, there would be "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694.

    1. The Inventory Search

        a. Applicable Law

"[T]he inventory search constitutes a well-defined exception to the warrant requirement" of the Fourth Amendment. *Illinois v. Lafayette*, 462 U.S. 640, 643 (1983) (citation omitted). Such searches are intended to "protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." *Colorado v. Bertine,* 479 U.S. 367, 372 (1987). "When a person is arrested in a place other than his home, the arresting officers may impound the personal effects that are with him at the time to ensure the safety of those effects or to remove nuisances from the area." *United States v. Perea*, 986 F.2d 633, 643 (2d Cir. 1993) (citation and quotation marks omitted). Thus, "when law enforcement officials take a vehicle into custody, they may search the vehicle and make an inventory of its contents without the need for a search warrant and without regard to whether there is probable cause to suspect the vehicle contains contraband or evidence of criminal conduct." *United States v. Lopez*, 547 F.3d 364, 369 (2d Cir. 2008) (citation omitted). When a vehicle is taken into custody, the officers additionally "may open closed containers as part of an inventory search." *United States v. Thompson*, 29 F.3d 62, 65 (2d Cir. 1994) (citation omitted).

Two limits have been imposed on inventory searches: limits based on procedure and limits based on officers' subjective intent. With regard to procedural limits, the Supreme Court has "stressed the importance, in determining the lawfulness of an inventory search, that it be conducted under standardized procedures." *Lopez*, 547 F.3d at 370 (quotation marks omitted) (citing *Bertine*, 479 U.S. at 374 & n.6; *Lafayette*, 462 U.S. at 648). Moreover, "reasonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment, even though courts might as a matter of hindsight be able to devise equally reasonable rules requiring a different procedure." *Bertine*, 479 U.S. at 374 (footnote omitted).

In terms of motivational limits, the Second Circuit has held that evidence recovered during an inventory search is subject to suppression "when the searching agents act in bad faith or *solely* for the purpose of investigation." *Thompson*, 29 F.3d at 65 (emphasis added) (citing *Bertine*, 479 U.S. at 372). The Second Circuit has approved inventory searches even when—unlike here—law enforcement officers suspect the presence of criminal evidence, in addition to having a legitimate alternative basis for the search:

> [O]fficers will inevitably be motivated in part by criminal investigative objectives. Such motivation, however, cannot reasonably disqualify an inventory search that is performed under standardized procedures for legitimate custodial purposes. . . . If good faith is a prerequisite of an inventory search, the expectation and motivation to find criminal evidence do not constitute bad faith.

*Lopez*, 547 F.3d at 372 (citations omitted).

### b. Petitioner's Challenges to the Inventory Search

As noted above, Petitioner makes three specific claims regarding the alleged unconstitutional nature of the inventory search: (1) the search was not connected to the domestic violence dispute for which the police arrested Petitioner, (2) Petitioner did not authorize the

search, nor was he present, and (3) Petitioner did not possess a firearm and did not pose a threat to the arresting officers. (Pet. 5.) Each of these claims lacks merit.

With regard to Petitioner's first claim, it is well-settled that the purpose of an inventory search is not investigatory in nature, but rather to "protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen or vandalized property, and to guard the police from danger." *Bertine*, 479 U.S. at 372; *see also Lopez*, 547 F.3d at 372. Because an inventory search does not have a primarily investigatory purpose, it is not necessary for the search to be connected to the criminal conduct that caused the police to conduct an inventory search. For example, in *Lopez*, the defendant was arrested for operating a vehicle while intoxicated. *Id.* at 366–67. The inventory search revealed the presence of cocaine and the defendant was eventually charged with possession of cocaine with intent to distribute. *Id*. at 367. The Second Circuit affirmed the defendant's conviction and legality of the inventory search, reasoning that the defendant's state of "intoxicat[ion] and the impoundment [of the defendant's car] . . . required the conduct of an inventory search." *Id*. at 372.

Similarly, Petitioner's arrest, which caused his vehicle to be left unattended, served as a valid basis for the police officers to impound the truck and conduct the inventory search. Because the vehicle was not in a legal parking space, (Gov't's Opp'n 4, 12; Gov't's Opp'n to Mot. To Suppress 9), the police had it towed in order to "remove [a] nuisance[] from the area," *Perea,* 986 F.2d at 643 (citation and quotation marks omitted). And, even if the truck had been parked legally, as Petitioner claimed in connection with the Suppression Motion, (*see* Mot. To Suppress ¶¶ 3, 6), impoundment would still have been proper. It was reasonable for the officers to believe that because Petitioner was being brought into custody, his truck would be unattended for an extended period of time. Because Petitioner was outside his home, "the arresting officers

13

[could] 'impound the personal effects that [we]re with him at the time to ensure the safety of those effects or to remove nuisances from the area.'" *Perea*, 986 F.2d at 643 (quoting *Cabbler v. Superintendent, Va. State Penitentiary*, 528 F.2d 1142, 1146 (4th Cir.1975)); *see also United States v. Barrios*, No. 07-CR-658, 2007 WL 3256945, at *2 (S.D.N.Y. Nov. 1, 2007), *aff'd*, 374 F. App'x 56 (2d Cir. 2010) ("[A] car that is legally parked in a public place . . . but that will be inaccessible to its owner for an extended period—as a result of an arrest for example—may . . . be impounded in order to safeguard the vehicle if such a step is reasonable under the circumstances." (citation omitted)).

The officers' *undisputed* willingness to allow Petitioner to make multiple calls to try to find someone to take his vehicle into possession further underscores the good faith underlying the inventory search. (Gov't's Opp'n 13; Gov't's Opp'n to Mot. To Suppress 9–10.) It was only after it became apparent that no one could immediately retrieve the vehicle that the officers decided to impound it. (*Id*.) Their actions undercut any suggestion that the officers proceeded in bad faith. Because the arresting officers had good cause to believe that Petitioner's truck was a hazard, the inventory search was proper and needed no connection to the domestic violence incident that led to Petitioner's arrest.

Petitioner's claim that his failure to authorize the search undermined its legality is similarly meritless. Consent is not required for a valid inventory search. As noted above, the purpose of an inventory search is to protect the owner's property and safeguard the police from danger or accusations of theft. *See Bertine*, 479 U.S. at 372. Petitioner's claim that he needed to be present and authorize the search is squarely at odds with the core purposes of an inventory search and the Inventory Policy pursuant to which this search was conducted. Indeed, the Inventory Policy provided that impoundment, which by its very nature involves removing the vehicle from

the sight and possession of its owner, was appropriate when a vehicle was "illegally parked, . . . abandoned[,] or involved in criminal activity." (Inventory Policy 1.) As discussed above, the officers had reason to believe that Petitioner's truck was illegally parked, and that it would become abandoned once Petitioner was taken into custody. Because the officers complied with these "standardized procedures," *Lopez,* 547 F.3d at 370 (citations and quotation marks omitted), the impoundment and inventory search were valid.

Petitioner's final assertion that he did not possess a firearm and did not pose a threat to the officers, (Pet. 5), similarly has no bearing on the inventory search's propriety. Apart from the fact that the inventory search eventually revealed a firearm in Petitioner's vehicle, (Gov't's Opp'n 2), the search was still valid. The officers arrested Petitioner because they had probable cause to believe that he had committed a crime, namely attacking his girlfriend at her home and damaging her property. (*Id*. at 4–5; Gov't's Opp'n to Mot. To Suppress 4–5.) Just as the defendant in *Lopez* did not necessarily pose a threat to the officers simply for being intoxicated, *see* 547 F.3d at 367, Petitioner did not need to visibly possess a firearm or pose a threat to the police officers for the officers to have a valid basis to conduct an inventory search.

### 2. Trial Counsel's Effectiveness

The record undeniably demonstrates that Petitioner's trial counsel's representation did not "f[a]ll below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. To the contrary, counsel made strategic choices that were well within the "wide range of reasonable professional assistance," *id*. at 689, including filing multiple rounds of legal challenges to the inventory search, (*see* Dkt. Nos. 9, 14, 19–20), and, ultimately, honoring his client's wish to accept a favorable plea offer rather than pursue suppression in light of overwhelming evidence

15

that the search was appropriately conducted, (*see* Dkt. No. 27; Dkt. (minute entry for May 8, 2014)).

The Petition presents nothing that calls into question the adequacy of counsel's efforts on Petitioner's behalf.  Indeed, as set forth above, Petitioner's plea allocution reflected unequivocal satisfaction with counsel's performance, including the strategic choice to forego further challenges to the inventory search.  *See supra* Section I.  Petitioner's sworn statements on these crucial points "carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *see also United States v. Torres,* 129 F.3d 710, 715 (2d Cir. 1997) ("A defendant's bald statements that simply contradict what he said at his plea allocution are not sufficient grounds to withdraw a guilty plea." (citation omitted)).

The purported deficiencies in counsel's performance that Petitioner *has* identified, (Pet. 5), do not in any way call into question the quality of counsel's efforts.  The Second Circuit has established that a "[f]ailure to make a meritless argument does not amount to ineffective assistance." *United States v. Arena,* 180 F.3d 380, 396 (2d Cir. 1999) (citation omitted).  In *United States v. Abad*, 514 F.3d 271 (2d Cir. 2008), for instance, the defendant argued that he received ineffective assistance of counsel because his counsel "failed to move to dismiss the indictment on speedy trial grounds . . . ." *Id.* at 275.  The Court found that because "any defense motion on either statutory or constitutional basis would have been denied . . . [the defendant's] counsel could not therefore have been ineffective for failing to make a motion that would have been futile." *Id*. at 275–76.  Similarly, for the reasons explained above, *see supra* Section II.B.1.b, the evidence from the inventory search was plainly admissible, thus rendering any motion to suppress the evidence "futile," *Abad*, 514 F.3d at 276.  Petitioner has neither presented new evidence of why his trial counsel was deficient nor shown why the proposed Suppression

Motion would have prevailed. Not pursuing a motion that will very likely fail is undoubtedly among the "variety of approaches [an] effective attorney[] might employ." *Parisi v. United States,* 529 F.3d 134, 141 (2d Cir. 2008). Because Petitioner's counsel chose to leverage the pending Suppression Motion to secure a favorable plea, rather than pursuing almost certainly futile arguments, counsel's conduct did not "f[a]ll below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.[3] With no new evidence presented as to why Petitioner could plausibly have been dissatisfied with or ill-served by his representation "as of the time of counsel's conduct," *id.* at 690, Petitioner cannot claim that his counsel's representation was inadequate.

    3. Prejudice

As noted, to prevail on an ineffective assistance claim, a petitioner must establish both constitutionally deficient assistance and prejudice from such deficient representation. *See Strickland*, 466 U.S. at 692–94; *see also Gonzalez v. United States*, 722 F.3d 118, 130 (2d Cir. 2013) (holding that a habeas petitioner claiming ineffective assistance of counsel must meet both *Strickland* prongs). In the context of habeas challenges to a guilty plea "a defendant must show the outcome of the plea process would have been different with competent advice." *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (citation omitted); *see also United States v. Arteca*, 411 F.3d 315, 320 (2d Cir. 2005) ("[I]n the context of plea negotiations, the defendant must show that there is a reasonable probability that were it not for counsel's errors, he would not have pled guilty and would have proceeded to trial." (citation omitted)). A habeas petitioner can also prevail if he can prove that but for his counsel's deficient performance, he would have received a

---

[3] Petitioner's attorney was able to negotiate a Plea Agreement that included only two counts, including a plea to a non-mandatory minimum drug offense. (*See* Indictment; Plea Tr. 2, 15–16, 18–19; Plea Agreement 1–2 & n.1.)

17

plea agreement with a lower sentence. *See Lafler*, 566 U.S. at 174. Proof that the defendant would not have pleaded guilty must include some "further objective evidence," and cannot simply be proven by "a defendant's self-serving, post-conviction testimony." *United States v. Gordon*, 156 F.3d, 376, 380–81 (2d Cir. 1998) (citation and quotation marks omitted).

Because Petitioner has failed to show why a motion to suppress the evidence from the inventory search would have been successful, he cannot prove that the "result of the proceeding would have been different," *Strickland*, 466 U.S. at 694, had his defense counsel pursued such a motion. In *Lopez v. Greiner*, 323 F. Supp. 2d 456 (S.D.N.Y. 2004), *aff'd*, 159 F. App'x 320 (2d Cir. 2005), a habeas petitioner attempted to prevail on the second prong of *Strickland* on the theory that his counsel in a state criminal proceeding failed to bring a motion to suppress the evidence obtained pursuant to a search warrant. *Id.* at 471. Judge Lynch denied the habeas petition, reasoning that to "establish prejudice under *Strickland* . . . [the defendant] must demonstrate that a suppression motion would have succeeded." *Id.* at 479 (footnote omitted). However, because the suppression motion "would have failed," the defendant "[could not] establish that had trial counsel made a suppression motion, the result of the proceeding would have been different." *Id.* at 480 (citations and quotation marks omitted).

For the reasons outlined above, Petitioner's proffered arguments are without legal merit. Because Petitioner's proffered suppression arguments likely would have failed, he cannot show that "the result of the proceeding would have been different." *Id.* Thus, Petitioner has failed to meet his burden on Strickland's second prong and cannot prove ineffective assistance of counsel.[4]

---

[4] It also bears noting that Petitioner has not remotely established that he could have received a better plea offer, or that he would have elected to reject the one he took, if other advice would have been given. *See Hill v. Lockhart*, 474 U.S. 52, 60 (1985) (rejecting a claim of

C. Evidentiary Hearing

As noted, an evidentiary hearing is not necessary when "the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). It is appropriate to render a decision without a testimonial hearing "where (1) the allegations of the motion, accepted as true, would not entitle the petitioner to relief[,] or (2) the documentary record, including any supplementary submissions such as affidavits, render a testimonial hearing unnecessary." *Rosa v. United States*, 170 F. Supp. 2d 388, 398 (S.D.N.Y. 2001) (citing *Chang v. United States,* 250 F.3d 79, 85–86 (2d Cir. 2001)). As explained herein, the record plainly demonstrates that Petitioner received effective assistance at every stage of the proceeding, and he has neither made allegations that would entitle him to relief nor articulated any facts warranting development at a hearing. Therefore, the Court concludes that there is no need for a hearing.

III. Conclusion

For the reasons discussed above, the Court dismisses the Petition.

As Petitioner has not made a substantial showing of the denial of a constitutional right, a Certificate of Appealability shall not be issued, *see* 28 U.S.C. § 2253(c)(2); *Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 111–12 (2d Cir. 2000), and the Court further certifies,

---

ineffective assistance of counsel because the petitioner failed to allege any facts that would suggest prejudice, such as the significant effect of counsel's advice on the petitioner's decision to plead guilty). Indeed, Petitioner does not identify what advice he received that made the plea he took the result of constitutionally ineffective representation. *See Paez v. United States*, Nos. 11-CV-2688, 08-CR-823-03, 2012 WL 1574826, at *2 (S.D.N.Y. May 3, 2012) (determining that the petitioner "only ma[de] conclusory assertions" regarding the claims that could have had bearing on his decision to plead guilty); *United States v. Gladney*, No. 09-CR-117, 2011 WL 381561, at *4 (D. Conn. Feb. 2, 2011) ("[The petitioner] failed to raise a substantial question of fact or law because he [did] not allege[] specific facts that would show that his former counsel's advice was objectively unreasonable."); *see also United States v. Galasso*, 50 F. App'x 488, 490 (2d Cir. 2002) (noting that the petitioner's "bald contention that advice [from counsel] was not forthcoming" regarding a plea offer was "unaccompanied by any more specific allegations and unsupported by any evidence in the record").

19

pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this judgment on the merits would not be taken in good faith, *see Coppedge v. United States*, 369 U.S. 438, 445 (1962) ("We consider a defendant's good faith . . . demonstrated when he seeks appellate review of any issue not frivolous."); *Burda Media Inc. v. Blumenberg*, 731 F. Supp. 2d 321, 322–23 (S.D.N.Y. 2010) (citing *Coppedge* and finding that an appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith).

The Clerk of the Court is respectfully directed to enter a judgment in favor of Respondent and to close this case.

SO ORDERED.

DATED:	April 13, 2020
	White Plains, New York

	_____
	KENNETH M. KARAS
	UNITED STATES DISTRICT JUDGE